Latroy Darnell RAY, Appellant,

v.

STATE of Indiana, Appellee.

No. 878S172.

Supreme Court of Indiana.

Nov. 8, 1979.

Rehearing Denied Jan. 23, 1980.

Sachs & Hess, Ronald F. Layer, Hammond, for appellant.

Theo. L. Sendak, Atty. Gen., Gordon L. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Latroy Darnell Ray was found guilty by a jury in Lake Superior Court, Criminal Division II, of first degree murder. Ind.Code § 35–13–4–1 (Burns 1975). He was sentenced to life imprisonment by the court. Appellant raises three issues for our consideration, concerning: (1) whether the trial court erred in refusing to hold a competency hearing immediately prior to trial, where appellant had been found incompetent to stand trial in January, 1977, and was subsequently found to be competent in October, 1977; (2) whether the trial court erred in denying appellant's motion to suppress his confession; and (3) whether the trial court erred in admitting appellant's statements without first determining appellant's capacity to intelligently waive his rights.

On November 15, 1976, Alice Smith was stabbed to death in her home in Gary, Indiana. Appellant Ray lived two doors away from the Smith home in the home of Malard Clark, and shared a room with Malard's son, James Clark. The Smith home had been burglarized, and Alice Smith had accused appellant Ray of perpetrating the

break-in. There was evidence that appellant told James Clark that he was going to kill Alice Smith because of her accusations, and that he later told the Clark boy that he had, in fact, killed Alice by stabbing her. There was further evidence that appellant removed his blood-covered clothes and placed them in a garbage can, where they were found by police. In addition, when police first saw appellant there was blood on his hands and on his clothing. Appellant gave police a written confession of his actions in this crime.

## I.

Appellant entered a plea of not guilty by reason of insanity, and was examined by court-appointed medical witnesses. A hearing was held on January 28, 1977, and appellant was found incompetent to stand trial. The court ordered appellant committed to Beatty Memorial Hospital. The staff at Beatty Hospital later informed the trial court that appellant was competent to stand trial, and the court accordingly held a second competency hearing on October 21, 1977. Based on the evidence presented at this hearing, the court found the defendant, Ray, competent to stand trial. We do not have a record of the evidence introduced at these hearings.

On January 16, 1978, the trial court appointed Dr. Bennie Carpenter to examine appellant to determine his sanity at the time of the crime. On March 15, 1978, appellant filed a request for a third competency hearing. This request was rejected by the court. Appellant contends the trial court abused its discretion by failing to hold a third competency hearing. Appellant's counsel indicated to the court that Dr. Carpenter had told him appellant was not competent to stand trial. This was the only reason given for the need for a third hearing.

This issue was presented to this Court in *Malo v. State*, (1977) 266 Ind. 157, 361 N.E.2d 1201. The defendant there had been found incompetent to stand trial and was subsequently found to be competent after a second hearing. The trial court denied Malo's request for a third hearing on his competency. In affirming the actions of the trial court, Justice Prentice, writing for a unanimous Court, stated:

"There was no event or occurrence subsequent to the determination of competence which amounted to reasonable grounds requiring a third hearing. Conceivably, incompetence might occur subsequent to a determination of competence, in which event a trial should not be had or, if commenced, a mistrial declared. Were we to follow the course of action urged by the defendant, however, a trial could never be had where the defendant's incompetence was being urged. Under such circumstances, there will always be indicators present which could be the basis of a reasonable ground for believing the defendant to have insufficient comprehension to be brought to trial. The existence of facts which would be reasonable grounds under some circumstances does not ipso facto mandate a hearing under all circumstances. The decision whether or not to hold a hearing lies in the province of the trial judge and should be disturbed upon review, only upon a showing of clear error. The indicators proffered by the defendant did not, in the context of this case, mandate a third hearing."

*Id.* at 161, 361 N.E.2d 1204.

Appellant attempts to distinguish *Malo v. State* by pointing out that Dr. Carpenter examined appellant after the second hearing and allegedly expressed doubts regarding his competency. In view of the record the trial judge had before him, we cannot say that indicators were present which rendered erroneous his finding that a third competency hearing was not necessary. There is no testimony of Dr. Carpenter in the record indicating that defendant was not competent to stand trial at the time of the trial. Dr. Carpenter testified that, in his opinion, appellant was insane at the time of the commission of this crime. However, he also testified that, at the examination of January, 1978, the examination in question here, he found Ray to be more

responsive to questions and more cooperative than he was in January of 1977, the date of the first examination.

Further, another psychiatrist, Dr. Frank Hogle, testified that he examined appellant for the fourth time on the day before the trial to determine whether appellant was insane at the time of the commission of this crime. Nothing in his testimony reflects a belief on his part that Ray was incompetent at the time of trial. As a matter of fact, Dr. Hogle testified that appellant was sane when the crime was committed. We held in *Howard v. State*, (1976) 265 Ind. 503, 355 N.E.2d 833, that a finding of competency to stand trial involves factual determinations, and, therefore, will be reversed only if not supported by the facts and inferences to be drawn therefrom. We think there was sufficient evidence to support the trial court's refusal of a third hearing. We find no abuse of discretion or error as to this issue.

## II.

■ Appellant moved to suppress a confession given on the day of his arrest. The trial court denied the motion to suppress and admitted the statement into evidence at trial. Appellant argues that this confession resulted from police activities which occurred after he had expressed his desire to remain silent, and, therefore, that his confession was not given voluntarily.

The testimony at the suppression hearing revealed that Officer Matin approached appellant at the jail, advised him of his *Miranda* rights, and asked if he knew the charges and if he wanted to talk about the incident. Ray stated he didn't know anything about it and didn't want to talk about it. Officer Matin then went into another room, where he talked to James Clark in the presence of his father, Malard Clark, for about an hour and a half. Matin returned to the room in which Ray was sitting and advised him that the police had the statement of Clark and other substantial evidence implicating him in the incident. Matin then asked Ray if he wanted to talk or remain silent. At that time, Ray indicated that he would talk, but he first asked if he could speak to Malard Clark. Ray was allowed to talk to Clark.

He told Clark that he did commit the crime and that he wanted to tell the police about it. Mr. Clark advised Officer Matin that Ray wished to speak to the police, and Officer Matin returned to the room in which Ray was sitting. He fully explained the *Miranda* rights to Ray. Ray indicated he understood his rights and signed the waiver form, after which he gave the confession in question. After giving the confession, Matin again went over the *Miranda* rights with Ray. He indicated again that he understood them and again reaffirmed his waiver.

At no time did Ray state that he wished to stop the interrogation or talk to an attorney before continuing. There was no evidence of any threats or coercion by the police to induce Ray to make the statements. In discussing our standard of review of this issue, we stated in *Ortiz v. State*, (1976) 265 Ind. 549, 553, 356 N.E.2d 1188, 1191:

"In determining whether a statement was voluntarily given, we look to all the circumstances surrounding its giving to determine whether it was 'induced by any violence, threats, promises, or other improper influence.' *Montes v. State*, (1975) 263 Ind. 390, 399, 332 N.E.2d 786, 792. The same test determines whether a waiver of the *Miranda* rights has occurred. *Nacoff v. State*, (1971) 256 Ind. 97, 267 N.E.2d 165. The burden is on the State to prove beyond a reasonable doubt the voluntariness of the statement or waiver. *Burton v. State*, (1973) 260 Ind. 94, 292 N.E.2d 790. In reviewing the trial court's ruling on the voluntariness of a statement or waiver, we do not weigh the evidence, but determine whether there is sufficient evidence to support the trial court's finding. *Raines v. State*, (1971) 256 Ind. 404, 269 N.E.2d 378."

*See Murphy v. State*, (1977) Ind., 369 N.E.2d 411, 414. Here, the defendant indicated initially that he did not wish to make any statement. However, he subsequently asked to talk to Mr. Clark, and, after doing so, asked Mr. Clark to send the police offi-

cers back to talk to him. He then gave them the confession in question. There was sufficient evidence to support the trial court's finding that the confession was given voluntarily, and we accordingly find no error here.

### III.

Finally, appellant asserts that the trial court erred in failing to suppress his confession since he was not shown to have been mentally competent at the time the confession was given. As we noted above, Dr. Frank Hogle examined Ray four times, the last of which was the day before trial. He testified that in his opinion Ray was sane at the time he gave this confession. He testified that he believed the defendant was sane on the date the crime was committed and the statement given, but he felt that Ray suffered an acute psychotic episode from a sense of guilt which caused Ray to be incompetent to stand trial. Dr. Hogle felt, however, that Ray had recovered from this psychotic episode at the time of trial. James Gaines, a professor of psychology at Purdue University, examined appellant at Beatty Hospital. In his opinion, appellant was trying to appear psychotic, and was faking and malingering in order to defend himself. On the other hand, Dr. Carpenter's opinion was that appellant Ray was insane at the time of the commission of the crime and at the time of giving of the confession.

In view of all of this evidence and our findings on Issues I and II, we hold the trial court had sufficient evidence before it to find that Ray had voluntarily and intelligently waived his rights in giving this confession. The court had sufficient evidence before it to determine that appellant Ray was mentally competent to understand his situation and to waive his rights.

Finding no error, we affirm the judgment of the trial court.

All Justices concur.